**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| SHELLY A. HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CIVIL CASE NO. 07-182-DRH-PMF |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Plaintiff, Shelly A. Harris, seeks judicial review of a final decision of the Commissioner of Social Security denying her December, 2003, applications for disability insurance benefits and supplemental security income. An Administrative Law Judge (ALJ) denied Harris' applications after finding that she was not disabled. That decision became final when the Appeals Council declined to review the ALJ's decision. Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) and 42 U.S.C. §1383(c)(3).

To receive disability benefits or supplemental security income, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry that must be followed in determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must determine in sequence: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets or equals one listed by the Commissioner, (4) whether the claimant can perform his or her past work, and (5) whether the claimant is capable of performing any work in the national economy. *Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000). If the claimant does not have a listed impairment but cannot perform his or her past work, the burden shifts to the Commissioner at Step 5 to show that the claimant can perform some other job. *Id.*

The ALJ evaluated plaintiff's application through Step 5 of the sequential evaluation. The ALJ first decided that plaintiff had severe impairments that did not meet or equal a listed impairment. The ALJ further found that she was able to perform a range of light work, could perform the personal care attendant job she had performed in the past, and could also perform a significant number of jobs in the national economy (R. 14-21).

**I. Consideration of Medical Evidence**

Plaintiff argues that the ALJ failed to consider a line of medical evidence developed in April, 2005. In support of this argument, she directs the Court's attention to the ALJ's Step 2 finding. At that stage of his analysis, the ALJ reviewed the medical evidence and found that plaintiff had a severe combination of impairments. In explaining the finding, the ALJ described plaintiff's lumbar spine impairment as "mild spinal stenosis L4/5 due to disc bulge and facet hypertrophy" (R. 16).

Plaintiff believes it was error for the ALJ to describe her lumbar spinal condition without discussing two pieces of medical evidence: (1) a comment in Dr. Strack's April 28, 2004, progress report suggesting that a piece of plaintiff's herniated disc was touching a nerve and (2) several medical reports suggesting that plaintiff had spinal stenosis at the L2-3 level of her spine. Defendant maintains that the ALJ reasonably evaluated the medical evidence regarding plaintiff's lumbar spine. Defendant further notes that some evidence of L2-3 stenosis was provided by a physician's assistant, who is not an acceptable medical source.

Plaintiff's disability claims were based, in part, on symptoms relating to her lumbar spinal impairments. The record shows that various physicians evaluated the lumbar portion of plaintiff's spine using diagnostic tests. In January, 2004, myelogram and myelogram/CT scans were performed and interpreted as showing a mass at L2-3 and spinal stenosis at the L 4-5 level (R. 103-04; 113-114).

On April 28, 2004, Dr. Strack made a progress note, indicating that plaintiff had seen Dr. Sherrill, who felt she had a ruptured disc and that a piece of the disc was touching a nerve root (R. 190).[1]

On February 2, 2005, Dr. Heffner evaluated plaintiff's condition in light of the diagnostice tests and diagnosed a herniated disc at L2-3 and significant spinal stenosis at L4-5. He recommended physical therapy and epidural and selective nerve root blocks (R. 215).

On April 4, 2005, Dr. Juergens performed a spinal injection. His report says that spinal stenosis was present at the L2-3 level of plaintiff's spine (rather than the L4-5 level). The basis for this comment is unstated (R. 231).

---

[1] That suspicion was not mentioned in records submitted by Dr. Sherrill (R. 204-05).

On April 6, 2005, a lumbar MRI was interpreted as showing a protruding disc at L2-3 and mild spinal stenosis from L3-4 through L5-S1 due to hypertrophy of the facet joints (R. 213).

On April 7, 2005, Dr. Heffner noted that plaintiff was showing some definite improvement. He confirmed that plaintiff's MRI study showed some disc protrusion at the L2-3 level (R. 212).

On April 8, 2005, a physician's assistant prepared a report indicating that a CT scan of plaintiff's lumbar spine showed various abnormalities, including severe spinal stenosis at the L2-3 level (R. 210).

On June 13, 2005, Dr. Juergens performed the second spinal injection. His report again reflects spinal stenosis at the L2-3 rather than at the L3-4 level (R. 229).

On July 5, 2005, Dr. Juergens noted that plaintiff's surgical site was healing and that she reported 95% relief of symptoms (R. 206).

On July 22, 2005, Dr. Heffner formed the opinion that plaintiff made very good progress following the epidural injections and did not require further treatment (R. 211).

On April 10, 2005, plaintiff submitted a pre-hearing brief to the ALJ. She described her significant lumbar spine impairments as a right-sided herniated disc at the L2-3 level and spinal stenosis at the L4-5 level, noting that these ailments had been treated with epidural steroid injections (R. 46).

Plaintiff testified on April 25, 2006. She explained that she lived with her son, age 5. She discussed the ruptured disc in her spine, which caused her to experience muscle spasms in her legs and lower back when she moved around. Her ailment was treated with injections and pain medication. She estimated that she could lift items weighing 10 to 15 pounds, sit for about 30 minutes before changing positions, walk about one block, and stand for about 15 to 30 minutes. She could not bend, stoop, or squat. She could drive short distances, shop once per week, attend church once per month, get dressed, and use a spoon or fork. She was assisted by her sister, who performed

housework, helped her bathe, and drove her son to school. She spent most of her time taking medication and laying down to rest. Plaintiff's last job ended in June, 2003, due to a lack of funding. She drew unemployment benefits for six months and looked for work during that time (R. 255-266).

In reporting his Step 2 finding that plaintiff had a severe combination of impairments, the ALJ did not refer to spinal stenosis at the L 2-3 level of plaintiff's spine or indicate that a piece of disc was touching a nerve (R. 18).

ALJs must consider all relevant evidence and may not select and discuss only evidence that favors an ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Medical evidence of an impairment must be provided by acceptable medical sources. 20 C.F.R. § 1513(a);416.913(a).

The Court is not persuaded that the ALJ assessed the impact of plaintiff's lumbar spine impairments on her ability to function without considering all of the important medical evidence. The ALJ's discussion shows that he recognized the severity of plaintiff's lumbar spine impairments and that relevant, credible medical evidence describing those impairments was considered. A discussion of each piece of evidence is not required.

Plaintiff also argues that the ALJ failed to consider her lumbar spine impairment in combination with her extreme obesity. Defendant responds that the ALJ considered the combined effect of plaintiff's medical impairments.

In assessing the severity of multiple impairments, ALJs consider the combined effect of all impairments. 20 C.F.R. §§ 404.1523; 416.923. In his report, the ALJ recognized that obligation and mentioned that plaintiff's impairments "combined" to limit her ability to perform work functions (R. 15-16). The ALJ discussed plaintiff's chronic back and neck pain, specific spine defects, as well

as carpal tunnel syndrome and obesity. These aspects of the report adequately demonstrate that the ALJ considered the combined effect of plaintiff's multiple impairments. *See Fox v. Heckler*, 776 F.2d 738, 740-42 (7th Cir. 1985)(where an ALJ discusses a claimant's various conditions, an argument that those conditions were not considered in combination lacks merit).

Plaintiff also argues that the ALJ failed to consult a medical expert before deciding whether the combined effect of her impairments satisfied the criteria of a listed impairment. Defendant responds that the authority cited is not precedential and conflicts with policy.

In October, 2004, Dr. Clement A. Gotway reviewed plaintiff's medical records and determined that her medically determinable impairments did not meet or equal a listed impairment (R. 240). This decision was made after plaintiff's spinal impairments were evaluated by Drs. Strack, Mellion, and Sherrill, following diagnostic testing and before plaintiff achieved 95% improvement in her symptoms with treatment from Dr. Juergens (R. 124-25, 190, 206).

Plaintiff relies on *Honeysucker v. Bowen*, 649 F.Supp. 1155, 1159-60 (N.D. Ill. 1986), where the obligation to develop an adequate record was viewed as requiring expert opinion evidence describing the combined effect of multiple impairments. That holding has not been followed in the Seventh Circuit, and seems to be at odds with the applicable regulation and more recent pronouncements outlining the ALJ's responsibility to develop medical evidence. *See* 20 C.F.R. § 404.1512(d); *Luna v. Shalala*, 22 F.3d 687, 692-3 (7th Cir. 1994)(finding no reversible error when ALJ failed to update medical evidence); *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir.1994)(indicating the obligation to develop the record extends to existing medical reports). The Court is not persuaded that the ALJ should have rejected Dr. Gotway's October, 2004, determination and obtained another medical opinion before deciding whether the combination of plaintiff's impairments satisfied the listing criteria.[2]

---

[2] Social Security Ruling 96-6p identifies some circumstances in which ALJs are required to update medical opinion evidence. Because plaintiff does not rely on this policy, it is not

## II. ALJ's Consideration of Carpal Tunnel Syndrome

Plaintiff also argues that the ALJ failed to properly consider possible functional restrictions imposed by her carpal tunnel syndrome. She suggests that the ALJ should have proposed a different hypothetical question to the vocational expert, adding a restriction against repetitive hand motions in order to avoid a risk to her health or aggravation of her condition. Defendant responds that substantial evidence supports the ALJ's determination that she retained the ability to perform a range of light work.

Residual functional capacity is an assessment of the most a person can do despite limitations caused by medically determinable physical and mental impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). When a judge poses a hypothetical question to a vocational expert, the question must include all limitations supported by the record. *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).

The record includes test results showing "moderate to severe" bilateral carpal tunnel (R. 16, 97-98, 153). The ALJ asked a vocational expert to identify jobs for a hypothetical person who was capable of performing light and sedentary work with certain limitations, excluding stooping, crawling, and climbing ladders, ropes or scaffolds. The vocational expert identified jobs as a personal care attendant, cashier, office helper, greeter, and video surveillance worker (R. 271-273).

Plaintiff believes the ALJ should have inferred that moderate to severe carpal tunnel syndrome prevented repeated hand and wrist motions. Of course, ALJs are not qualified to make such medical judgments. *See Schmidt v. Sullivan*, 914 F.2d 117, 188 (7th Cir. 1990)(ALJs must be careful not to succumb to the temptation to make independent determinations about a claimant's

---

addressed.

condition). The ALJ properly assessed plaintiff's functional abilities and limitations on the basis of

credible evidence in the record, which includes objective evidence of treatment with medication; a good ability to grip and manipulate items with her hands; as well as opinion evidence that plaintiff retained the ability to perform light work and occasionally lift, carry, push, pull, handle, and finger items weighing up to 20 pounds (R. 88, 155, 162, 164, 168). This evidence and vocational testimony provide substantial support for the ALJ's finding that plaintiff could return to her past job as a personal care assistant and could also work as a cashier or office clerk (R. 19-20).

Plaintiff theorizes that these jobs would seriously aggravate her carpal tunnel syndrome. Her concerns are based on general information gleaned from an outside source. The Court is not persuaded that the ALJ had a duty to consult a source outside of the record to estimate plaintiff's limitations or that such information should have been used when hypothetical questions were posed to the vocational expert.

### III.     Credibility Assessment

Plaintiff also challenges the ALJ's assessment of the credibility of her testimony. She maintains that the ALJ improperly considered three factors: (1) her daily activities, (2) her application for work and unemployment benefits, and (3) her failure to lose weight. Defendant concedes that the ALJ should not have considered failure to lose weight in assessing credibility but contends that the error was a harmless flaw in the analysis.

Credibility determinations are afforded special deference because ALJs have a unique ability to observe the witness and evaluate testimony. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, when an ALJ bases his credibility determination on serious errors in reasoning, remand

is required. *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004).

The ALJ decided that plaintiff's symptoms were valid and that her pain complaints were credible to the point that they restricted her to a reduced range of light work with a sit/stand option. Otherwise, her description of the intensity, duration, and limiting effects of those symptoms were not credible. In making the assessment, the ALJ relied on objective medical evidence, plaintiff's status as the sole provider for a 5 year old child, her ability to "drive as needed," her ability to "shop five days a week," and her decision to apply for unemployment benefits (R. 18-19).

Plaintiff argues that her decision to apply for unemployment benefits does not support the ALJ's credibility assessment. She relies on *Spencer v. Bowen*, 798 F.2d 275, 278 (8th Cir. 1986), where the Court of Appeals found that claimant's testimony should have been accepted because it was fully supported by medical reports, objective findings, and treatment records and the only possible inconsistency was adequately explained.

A wide assortment of evidence may be considered when ALJs assess testimony. 20 C.F.R. § 1529(c)(3). Plaintiff's decision to apply for unemployment benefits is only one factor supporting the ALJ's assessment. Although it may not be strong enough to supply sole support for the assessment, it is an aspect of plaintiff's work history and supplies some rational support. *Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005)(affirming credibility assessment where decision to apply for unemployment benefits was one of several factors adversely impacting credibility). Plaintiff's last job did not end due to health issues; her efforts to collect unemployment benefits and find work suggest that she could work on a sustained basis, which detracts somewhat from the reliability of her description of her limitations (R. 256).

Plaintiff's status as a single parent caring for a young child also lends some support to the ALJ's credibility assessment. Although plaintiff explained that her sister assisted with some tasks,

the ALJ could rationally infer that many child care-taking activities are somewhat inconsistent with a very limited ability to perform basic work functions.

Plaintiff's ability to drive short distances and shop on occasion also lend some support to the ALJ's assessment. While those activities do not demonstrate an ability to work, they suggest that plaintiff's activities were not as restrictive as she claimed.

The medical record also lends considerable support to the ALJ's credibility assessment. The ALJ properly took note that plaintiff was not taking "heavy duty" pain medication (R. 19). None of plaintiff's treating physicians encouraged plaintiff to severely restrict her activities or offered the opinion that she was unable to perform basic work tasks on a sustained basis.[3] Rather, the records show that plaintiff achieved significant improvement with treatment (R. 206, 207, 211, 212).

Defendant concedes that plaintiff's weight gain was not properly considered. The ALJ mentioned that plaintiff's weight climbed to 326 pounds despite urging from several physicians to lose weight. Plaintiff did not think her weight had any effect on her condition, explaining that she had always been heavy (R. 261). The ALJ ultimately decided that plaintiff's weight had an effect on her physical conditioning as well as her back, neck, and knee pain (R. 17).

Administrative decisions will not be overturned on the basis of a harmless error. *Sanchez v. Barnhart*, 467 F.3d 1081, 1082-83 (7th Cir. 2006). Plaintiff's weight gain was only one aspect of the ALJ's credibility assessment. This flaw in the ALJ's analysis is minor and does not seriously undermine the adverse credibility finding as to some aspects of plaintiff's testimony. The ALJ's credibility assessment is not patently wrong or based on serious errors of reasoning and should not

---

[3] On one occasion, a radiologist temporarily restricted plaintiff's activities following a myelogram of her lumbar spine (R. 108).

be set aside.

## IV. Conclusion

IT IS RECOMMENDED that the Commissioner's final decision denying Shelly A. Harris' December, 2003, applications for disability insurance benefits and supplemental security income be AFFIRMED.

SUBMITTED: __February 27, 2008__.

*s/Philip M. Frazier*
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**